IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 24-CR-0072-RBW |
| v. | : | 40 U.S.C. § 5104(e)(2)(D) |
| **KELLY LYNN FONTAINE,** | : | 40 U.S.C. § 5104(e)(2)(G) |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Kelly Lynn Fontaine, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, FONTAINE and her co-defendant, Bryan Dula, attended a rally at the National Mall in Washington, D.C. to protest the Congressional certification of the 2020 presidential election. The defendant knew that Congress was in session that day for that purpose.

9. That afternoon after the rally had concluded the defendant and Dula entered the Upper Northwest Terrace immediately outside of the U.S. Capitol building, an area that was not open to the public on that day. As they approached the Upper Northwest Terrace they walked past bike rack barricades which had been toppled over, and understood that they were in an area which was not open to the public.

10. Once at the Northwest Terrace the defendant saw others attempting to force entry into the Capitol building through both doors and windows. Eventually a rioter was able to get a

door open and he and hundreds of other rioters began to enter the Capitol building.

11. The defendant entered the U.S. Capitol building with Dula through the Senate Parliamentarian's Door at approximately 2:55 p.m.. When they entered the building, an alarm was blaring loudly. Shortly after entering the building, the defendant and Dula paused and Dula took a photograph of the defendant with a cellular phone as she posed among the other rioters also entering the building.

12. The defendant and Dula walked down a hallway further into the building and continued walking through the first floor of the Capitol until they reached the North Door to the Capitol, where they exited at approximately 3:06 p.m.

13. At the time the defendant and Dula were on the Upper Northwest Terrace and entered the Capitol building, the defendant knew that their actions were disorderly or disruptive, and the defendant was at the Capitol and entered the building intending to impede, disrupt, or disturb the orderly conduct of a session of Congress.

14. The defendant knew at the time she entered the U.S. Capitol Building that she did not have permission to enter the building and the defendant paraded, demonstrated, or picketed.

### *Elements of the Offense*

15. The parties agree that Disorderly Conduct in a Capitol Building (40 U.S.C. § 5104(e)(2)(D)) requires the following elements:

   a. That the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;

   b. That the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and,

   c. That the defendant acted willfully and knowingly.

16. The parties agree that Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104(e)(2)(G)) requires the following elements:

   a. That the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and

   b. That the defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

17. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that she willfully and knowingly engaged in disorderly and disruptive conduct in the Capitol Building and grounds, and that she acted intending to impede, disrupt, and disturb the joint session of Congress on January 6, 2021. Further the defendant agrees that she knowingly and willfully paraded and demonstrated in the Capitol building that day. The defendant admits that she is guilty of Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D), and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   *s/ Joseph S. Smith, Jr.*
JOSEPH S.S SMITH, JR.
Assistant U.S. Attorney
CA Bar No. 200108
U.S. Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
(619) 546-8299
Joseph.s.smith@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Kelly Lynn Fontaine, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/1/24

Kelly Lynn Fontaine
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/3/24

Daniel Hesler
Attorney for Defendant