**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 24-cr-0072-RBW |
| v. | : | |
| | : | |
| KELLY LYNN FONTAINE and | : | |
| BRIAN DULA, | : | |
| | : | |
| **Defendants** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. The defendants, Kelly Lynn Fontaine and Brian Dula, have each pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four).

For the reasons set forth herein, the government requests that this Court sentence (1) Kelly Fontaine to 21 days' incarceration on Count Three and (2) Brian Dula to 14 days' incarceration on Count Three. Additionally, the government requests that this Court sentence both defendants to 36 months of probation on Count Four, 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.   **Introduction**

Defendant Kelly Lynn Fontaine, a 54 year old controller/operating manager at a roadside service company, and her then-boyfriend and now husband, Brian Dula, a 53 year old project manager at an architectural woodworking design company, participated in the January 6, 2021

1

attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Both defendants pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). For Dula, the government's recommendation is supported by Dula's (1) knowing participation in a dangerous crowd of rioters that amassed outside the doors to the Capitol Building, and (2) entry into the Capitol Building only minutes after other rioters violently breached the doors in his presence. These same factors support the government's recommendation as to Fontaine, in addition to her (3) repeatedly spreading false and incendiary information afterwards about the riot on social media.

The Court must also consider that the defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of the crime support sentences of 21 days' incarceration for Fontaine and 14 days' incarceration for

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

Dula, as well as 36 months' probation, 60 hours of community service, and $500 in restitution as to both.

II.      **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense, ECF 38, at 1-3.

*Fontaine and Dula's Roles in the January 6, 2021 Attack on the Capitol*

Fontaine and Dula made plans to travel together to Washington, D.C. to attend the election certification protest set for January 6, 2021. In advance of their travel to the Washington, D.C., area, Fontaine sent an image, Image 1, promoting the protest/rally over Facebook on December 20, 2020.



*Image 1: Fontaine circulated this image on Facebook before traveling to Washington, D.C. on January 6*

Further, on January 5, 2021, Fontaine commented on another user's Facebook post, "Bring it!!! Headed to DC!!" Fontaine and Dula flew from Chicago, Illinois, and arrived in the D.C. metropolitan area that same day.

On the morning of January 6, 2021, Fontaine and Dula attended the protest rally on the National Mall. After the protest concluded, Fontaine and Dula left the area of the Ellipse and marched down to the Capitol Building with a large crowd.

When Fontaine and Dula arrived at West front of the Capitol building, they worked their way past the restricted perimeter which surrounded the Capitol and up the steps to the Upper Northwest Terrace. As they approached the Upper Northwest Terrace, they walked past a toppled over bicycle rack barricade with yellow "Do Not Cross" tape. Image 2.



*Image 2: Fontaine and Dula walked past and ignored barriers that clearly demarcated a restricted perimeter.*

Once Fontaine and Dula reached the Upper Northwest Terrace, they joined with hundreds of other rioters as they filled the courtyard. During this time, rioters were attempting entry through both the Senate Wing Doors and through a side door north of Senate Wing Doors. This side door, sometimes referred to as the Senate Parliamentarian Door or the Senate Fire Door, is at the top of

4

a small set of stairs and was locked and, like all other doors at the U.S. Capitol that day, was not open to the public.

In video taken by another rioter, Fontaine and Dula were both filmed standing amidst the chaos, while one individual in front of them was captured climbing up the exterior of the building and tear gas emanated from the area of the Senate Wing Doors. Image 3.[2]



Image 3: Tear gas deployed near the Senate Wing Doors while Fontaine and Dula were present at the Upper West Terrace

---

[2] In the video, posted at https://www.youtube.com/watch?v=JNNY2zDuWOI&t=234s and provided to the Court as Government's Video Exhibit 1, a rioter on the Upper West Terrace documents the chaos occurring while Fontaine and Dula are present. The video initially shows a rioter climbing the side of the building and still perched on a second-floor balcony at timestamp 3 min:46 sec, then pans over to capture the defendants in the video at 3 min:55 sec. The video again captures the defendants at 5 min:22 sec, then records the deployment of tear gas by officers at 5 min:50 sec.

Fontaine also took a selfie during this time, giving a thumbs up to the chaos surrounding her, with the area of the Senate Wing Doors and the Parliamentarian Door visible in the background. Image 4.



*Image 4: Fontaine celebrated amidst the chaos outside the Senate Wing Door.*

At approximately 2:42 p.m., a rioter was able to break the glass portion of the Senate Parliamentarian's Door, Image 5, and then forced the door open. Numerous rioters entered and pushed back police officers stationed inside of the door. Image 6. Dozens of other rioters then began entering the Capitol Building through the breached doorway, during which time Fontaine took a photograph. Image 7.



*Image 5: Fontaine and Dula present at the Upper West Terrace as a rioter breached the Senate Parliamentarian Door.*



*Image 6: Initial breach by rioters at the Senate Parliamentarian Door.*



*Image 7: Fontaine took a photo of rioters entering through the breached door shortly before she and Dula followed them inside.*

Fontaine and Dula then moved forward and entered the U.S. Capitol through that door at approximately 2:55 p.m., just over ten minutes after the initial violent breach at 2:42 p.m. After they entered, they took pictures and/or video as they walked. Image 8.



*Image 8: Fontaine posed for celebratory photo after entering the Capitol building.*

After Fontaine posed for Dula, the two walked further inside the U.S. Capitol Building, walking down the north hallway of the Senate Wing. Fontaine and Dula walked through the Lower Senate Corridors, directly below where the Senate and then-Vice President had recently been evacuated. They traveled toward the North Door, where they exited at approximately 3:06 p.m. The defendants were inside the Capitol Building for approximately 11 minutes before exiting.

Fontaine and Dula left Washington, D.C., on January 7, 2021, and in the days and weeks after January 6, Fontaine was active posting on social media, minimizing the severity of the acts that day and spreading misinformation about what occurred.

For example, on January 7, 2021, Fontaine responded to a post on Facebook stating "nothing started until Antifa and BLM showed up but the FakeStream media will never let their sheep know that." Fontaine responded to another post later that day stating "Antifa was dressed like Trump supporters....It was ANTIFA Mary.  It was peaceful, ANTIFA showed and police in riot gear were deployed.  It was NOT like this during the March.  Lies." To another post she replied,

9

"I was literally 50 ft away from the OPEN DOORS when they started entering....looks like a "storming" right?!"

In part of a longer post on January 9, 2021, Fontaine said:

> This was staged and anyone who doesn't see it is those on the left who are being fed this true and utter insanity. Did you see the cop on the stairwell-LEADING them up, but portrayed as being "stormed ". WHO can look at that video and NOT SEE?!! This was staged to silence our voice. Hypocrites-burn the cities, police departments and court houses, destroy businesses, take over private property—this is a constitutional crisis that needs to be handled NOW! Pelosi is INSANE! They are setting the war stage with every syllable she spews. And social media, this will not be allowed in our country. THEY are knowingly invoking violence, poking the lion and he is WOKE! They want unity my ass, they want to take over. WE THE PEOPLE will not stand for this.

On January 12, 2021, Fontaine posted "F😡ck your Unity, we will NEVER forget and you will be exposed and pay! Tick tock traitors!" Then, as late as January 23, 2021, she was still spreading lies about January 6th, replying to a post by saying "there was no storming. The doors were opened and people were let in. Please don't Believe what msm is continuing to brainwash the sheep with unless you were physically present you have no idea what you are talking about."

*Defendants' Interview*

On September 26, 2022, FBI agents conducted an interview with Fontaine and Dula together at a coffee shop in Romeoville, Illinois. During the interview they both admitted to attending the protest on January 6, 2021, and then going over to the Capitol Building afterwards. They admitted to walking up the steps to the Capitol Building, and Fontaine stated that she saw individuals attempting to break the building's windows when they got there. They both admitted to later entering the building and Fontaine said that once inside she observed a female being led out of the building by the police, kicking and screaming. She also said that she saw a person

walking around with a very ornate flag, which she believed had been stolen from an office. Dula described the scene inside the Capitol Building to agents as "a shit show." Fontaine and Dula stated that they left the building after Fontaine asked an officer for directions.

During the interview Fontaine said that she believed the election yielded unjust results and wanted to have her voice heard but did not have any desire to participate in violence and was embarrassed to be associated with the aftermath of January 6 and the events which unfolded. Dula said that he believed in the country and thought that there was an injustice concerning the election, but that he did not have any desire or intent to participate in violence.

*The Charges and Plea Agreement*

On February 8, 2024, the United States charged both defendants in a 4-count Information with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104 (e)(2)(G). On June 10, 2024, pursuant to separate plea agreements, both defendants pleaded guilty to Counts 3 and 4 of the Information, charging them with violations of 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104 (e)(2)(G). By plea agreement, both defendants agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Both defendants now face a sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, both defendants face up to six months of imprisonment and a fine of up to $5,000. Both defendants must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 21 days' incarceration for Fontaine and 14 days' incarceration for Dula.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing the defendants' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like Fontaine and Dula, the absence of violent or destructive acts is not a mitigating factor. Had the defendants engaged in such conduct, they would have faced additional criminal charges.

One of the most important factors in both Fontaine's and Dula's cases is that they were present outside the doors to the Capitol Building while other rioters were scaling the building, violently breaking doors and windows to get in, and were being tear-gassed by police, yet they both chose to continue forward and enter the Capitol through one of the broken doors.

Fontaine's use of social media in the weeks after January 6th is another significant aggravating factor, as she used social media to publicly spin a narrative that she and the other rioters weren't at fault and that other actors, whether they be complicit police officers, ANTIFA,

12

then-Speaker Pelosi, or the "FakeStream media," were responsible for the acts perpetrated by rioters on that day.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration and supervision under probation in this matter for both Fontaine and Dula.

### B. The Defendants' History and Characteristics

Fontaine is a fifty-four-year-old, long-term Illinois resident who has worked as a controller/operating manager at an automobile roadside service company for the past seven years. PSR ¶¶ 34, 55. According to the PSR, Fontaine has one adult child and one minor child, PSR ¶ 36, and currently resides with her husband and co-defendant, Brian Dula, in Lockport Illinois. PSR ¶ 39. The PSR reports that Fontaine has no criminal history.

Dula is a fifty-three-year-old resident of Illinois who has worked as a carpenter for years and presently is a project manager at an architectural woodwork design company. PSR ¶¶ 49-53. According to the PSR, Dula has two adult children, PSR ¶ 38, and currently resides with his wife and co-defendant, Kelly Fontaine and her two daughters in Lockport Illinois. PSR ¶ 38. The PSR reports that Dula has no criminal history.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

13

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by these defendants. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to these defendants also weighs in favor of a term of incarceration. Although neither Fontaine nor Dula have a prior criminal history, their decision to participate in the events of January 6, 2021, to enter the U.S. Capitol Building during the riot, and to contribute to the chaos inside, call for substantial deterrence. Further, Fontaine's later propagation of lies about the riot and its causes call for additional deterrence for

her, specifically. This Court should impose appropriate sentences to deter the defendants from repeating these or similar criminal acts.

Even before Fontaine and Dula reached the Capitol building, they were on notice that the crowd they had joined had become a violent mob. As they walked up the stairs to the Upper West Terrace, they passed bike rack barricades which had been torn down, and when they arrived at the Terrace, they were surrounded by the chaos of the crowd, as rioters scaled the building and attempted breaches, and police were forced to use tear gas in an effort to repel them. Despite being surrounded by this chaos and lawlessness, Fontaine and Dula elected to not only stay in the restricted area, but to join others in the mob, take celebratory selfie photos, and unlawfully enter the Capitol building itself after others had smashed the glass of the doors and forced their way in.

Fontaine claimed in later posts that events on January 6th were "staged to silence our voice," and that then House Speaker Nancy Pelosi and others "are setting the war stage with every syllable she (PELOSI) spews."  On January 12, 2021, Fontaine posted "F#@!ck your Unity, we will NEVER forget and you will be exposed and pay!  Tick tock traitors!" Then as late as January 23, 2021, Fontaine replied to a post saying "there was no storming.  The doors were opened and people were let in. Please don't Believe what msm is continuing to brainwash the sheep with unless you were physically present you have no idea what you are talking about."

With the 2024 presidential election approaching, and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Fontaine and Dula each in a manner sufficient to deter them specifically, and others generally, from going down that road again.

15

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[3] This Court must sentence Fontaine and Dula based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

Both Fontaine and Dula have pleaded guilty to Counts Three and Four of the Information, for violating 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). These offenses are both Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Tammy Bronsburg,* 21-cr-144-RBW, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Buildings). Like Fontaine and Dula, Bronsburg was on the West Front of the Capitol building and went up the stairs with other rioters, arriving at the Upper West Terrace at around the same time as the defendants. Also, like Fontaine and Dula, Bronsburg entered the Capitol through the Senate Fire Door soon after others rioters had breached it. Bronsburg initially remained in the building for 30 seconds, before departing through the same door she entered only minutes before that Fontaine and Dula would enter that same door. But then, unlike Fontaine and Dula, Bronsburg re-entered the Capitol Building later through the Senate Wing Door, then sat in an office in the Capitol and drank whiskey with other rioters before leaving the building after spending approximately eight minutes in the building.

While, like Fontaine, Bronsburg later bragged about getting inside the Capitol, and posted video taken inside of the Capitol to Facebook, Fontaine went further. Fontaine posted statements to Facebook on multiple separate days in the weeks after January 6, minimizing the severity of the acts that day and spreading misinformation about what had occurred. Also, while Bronsburg entered the Capitol two times, Fontaine and Dula each spent more total time in the Capitol that day than Bronsburg. The most apparent difference between Bronsburg and the present defendants is that Bronsburg has a criminal history that included a drug paraphernalia conviction in 2017 and a disorderly conduct conviction in 2020, while Fontaine and Dula, to their credit, have no criminal history. This Court sentenced Bronsburg to 20 days' incarceration and two years of probation.

In *United States v. Mark Nealy*, 23-cr-278-TSC, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). Like Fontaine and Dula, Nealy entered the Capitol building shortly after the breaches on the Upper West Terrace. Nealy walked around the interior of the Capitol building and was in the Capitol building for approximately thirteen minutes. Though Nealy entered the Capitol from the Upper

17

West Terrace and spent approximately the same amount of time in the Capitol building as Fontaine and Dula did, one distinguishing characteristic of Nealy is that he had been convicted of involuntary manslaughter in 2013 as a result of driving while drunk, for which he was sentenced to 36 months' probation. In contrast though, Nealy did not use social media after January 6th to publicly spin a false narrative that rioters weren't at fault and that other actors were responsible for the crimes that day as did Fontaine. Judge Chutkan sentenced Nealy to 14 days' incarceration.

## V.      Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that each defendant must pay $500 in restitution, which reflects in

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

18

part the role each played in the riot on January 6. Plea Agreement at ¶ 11. As the plea agreements reflect, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Fontaine and Dula's restitution payments must be made to the Clerk of the Court, who will forward the payments to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI.     Fine

The defendants' convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (e)(2)(G) subject them to a statutory maximum fine of $5,000 on each count *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider each defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, neither Fontaine, PSR ¶ 64, nor Dula, PSR ¶ 63, have shown an inability to pay, thus the Court has authority to impose a fine.

## VII.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence (1) Kelly Fontaine to 21 days' incarceration on Count Three and (2) Brian Dula to 14 days' incarceration on Count Three. Additionally, the government requests that this Court sentence both defendants to 36 months of probation on Count Four, 60 hours of community service, and, consistent with the plea agreement

in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on both Fontaine and Dula's liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crimes.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    s/ *Joseph S. Smith, Jr.*
        Assistant United States Attorney
        CA Bar No. 200108
        601 D Street, N.W.
        Washington, D.C. 20530
        (619) 546-8299
        joseph.s.smith@usdoj.gov